## C. W. Harris v. The State.

No. 3795.   Decided October 16, 1907.

**1.—Murder—Continuance.**

Where upon trial for murder the testimony of the absent witness, in the light of the record, could not possibly have caused a more favorable verdict than the one rendered, the cause will not be reversed and remanded, where the application for continuance and the motion for new trial were overruled.

**2.—Same—Conditional Uncommunicated Threats.**

Where upon trial for murder, the statement of the absent witness was that he overheard two negroes talking, the larger one (supposed to have been the deceased) stated, "Damn him (alluding to defendant), the s— of a b—h is no better than I is; if he fools with me I will jerk his heart out with this cotton-hook"; the same was a conditional uncommunicated threat, and would not be a predicate for a continuance; certainly not for a new trial; the minimum punishment of murder in the second degree having been assessed, and the verdict much lighter than the evidence justified.

**3.—Evidence—Declaration of Defendant—Res Gestae.**

Where upon appeal for conviction of murder the bill of exceptions showed that immediately after the homicide, appellant went to a store and got a shotgun, and that one of the owners of the store in the presence of a constable told him to put it down, and thereupon appellant offered to prove his declaration by the constable that he wanted the gun because he understood a strange negro was going about town armed with a shotgun, and appellant wanted to protect himself; and the bill further showed that like evidence had already been admitted, there was no reversible error in excluding this declaration.

**4.—Same—Charge of Court—Self-Defense—Converse Proposition.**

Where upon trial for murder the court charged the jury that defendant had a right to arm himself with a shotgun for self-protection, there was no error in not giving a converse charge that if he had armed himself to commit an unlawful homicide they could consider the fact as an incriminating circumstance; as such latter charge would have been on the weight of the evidence.

**5.—Same—Threats—Self-Defense.**

Where upon trial for murder the defendant claimed threats of the deceased, it was correct for the court to properly submit this phase of the case. See charge of court which was held proper.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Thos. Ivy, B. F. Scruggs, F. P. Works, Morrow & Smithdeal,* for appellant.—On question of motion for new trial: Blake v. State, 38 Texas Crim. Rep., 377; Reeves v. State, 34 Texas Crim. Rep., 483; Tankersley v. State, 31 Texas Crim. Rep., 595; Miller v. State, 18 Texas Crim. App., 232. On question of rejected testimony: Upton v. State, 48 Texas Crim. Rep., 289; 88 S. W. Rep., 212; Stockman v. State, 24 Texas Crim. App., 387; Jones v. State, 17 Texas Crim. App., 602; Kendall v. State, 8 Texas Crim. App., 569; Cochran v. State, 28 Texas Crim. App., 422. On question of charge of court: Croell v. State, 25 Texas Crim. App., 596. On question of threats: Bonner v. State, 29 Texas Crim. App., 223; Miles v. State, 18 Texas Crim. App., 156; Alexander v. State, 25 Texas Crim. App., 260.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of charge of court, and threats: Howard v. State, 23 Texas Crim. App., 265; Lynch v. State, 24 Texas Crim. App., 350.

· BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

The record shows that appellant killed George Jenkins on the depot platform in the town of Aquilla. About 10 o'clock appellant was on the platform, and deceased walked by; appellant thumped a ball of mud at the deceased, striking him as he passed. Deceased was a hired hand working at the depot rolling cotton. Some words passed between appellant and deceased. Appellant walked up in town, hired a shotgun, and said he was going to shoot some birds; also purchased some shells; went back to the depot, took his stand, and as deceased came by, hallooed to him to get out quick or to hike out; as deceased was running off he (appellant) shot him and killed him, the shot taking effect in the back of his neck and back part of one of his legs. This in substance is the State's case.

Appellant took the stand and testified that he was down at the platform sitting by the pump, and deceased came along and cursed him and told him he was a damn white son-of-a-bitch, and that he was going to kill him, and thereupon appellant said he went to town and got the gun, loaded it, and came back down there in order to protect himself, and that when deceased saw him he started towards appellant with a cotton-hook, and told him he was going to kill him. When deceased was a few feet away with the hook raised, appellant claims he shot and killed him (deceased). After killing the deceased appellant took the gun back and stated to some parties that he had killed a black bird. Deceased was a negro.

Appellant made a motion for continuance for the want of testimony of several witnesses. They all appeared except Charles Tennyson, who was at the time of the trial sick in a hospital at Waco. The application states that appellant expected to prove by the said witness that he heard deceased say, about an hour before the homicide, to another negro, that he (deceased) would tear the damned white son-of-a-bitch's heart out with his cotton-hook; that this statement was made by deceased to another negro whose name is not known to defendant, who told deceased that he had better let defendant alone. Attached to the State's motion contesting appellant's motion for a new trial is the affidavit of the absent witness, in which affidavit the absent witness does not swear to the statement above copied from the application for continuance, but the statement that the absent witness swears to is as follows: "I overheard two negroes talking; the larger negro stated, 'Damn him, the son-of-a-bitch is no better than I is; if he fools with me I will jerk his heart out with this cotton-hook.'" This is a conditional uncommunicated threat. Being a conditional threat, it would not be a predicate for a continuance; certainly not for a new trial. Conceding the materiality and probable truth of the statement, this court has uniformly held that unless a different verdict would have been reached, if the absent testimony had been procured,—yet we will not reverse a case for

the lack of said testimony unless an inspection of the record shows that it was reasonably probable that if said absent testimony had been before the jury a verdict more favorable to the defendant would have resulted. For a collation of authorities on this question see White's Code of Criminal Procedure, page 415. In the light of this record, we do not think the testimony here desired could possibly have caused a more favorable verdict than the one rendered. The facts, to our mind, show a very cruel and wanton murder; certainly in the second degree, and the evidence would have clearly warranted a verdict of murder in the first degree. The jury have seen fit to give appellant, however, the minimum punishment of murder in the second degree. We think this verdict much lighter than the evidence justifies. This being our conclusion, it necessarily follows that a conditional uncommunicated threat could not have served the purpose of lessening the verdict.

Bill of exceptions, No. 2, shows that immediately after the homicide, appellant went to a store quite near the depot, got a shotgun out of the gun case, and that one of the owners of the store told him to put it down, and thereupon the defendant offered to prove what his purpose was in attempting to get the gun by proving his declaration that accompanied the act. This bill, however, shows that about the time the witness Aylor told appellant to put down the gun the constable came to appellant and told him he wanted the gun, and appellant told the constable he wanted the gun because he understood a strange negro was going about town armed with a shotgun, and he wanted to protect himself. Appellant offered to prove by the constable, Autrey, that he made this statement at the time. The bill shows, in this connection, however, that appellant went on the stand and was permitted to and did testify that at the time he got the gun from Aylor's store, after the homicide, he understood there was another strange negro going about town armed and that he wanted to protect himself. The bill further shows that other witnesses were permitted to testify that they informed defendant that a negro was in town with a shotgun, a short while before defendant went in the store the second time for a gun. In the light of the evidence admitted, we do not think there was any error authorizing a reversal of this case in the failure of the court to permit the res gestæ declaration at the time of attempting to take the gun out of the rack.

Appellant, in his motion for a new trial, complains of the twenty-fourth paragraph of the court's charge, which is as follows: "You are instructed that if the defendant had been informed by the deceased that he, the deceased, would kill the defendant, or if the defendant had reasonable grounds to believe or apprehend that the deceased intended to assault him and inflict upon him serious bodily harm, or if you have a reasonable doubt as to the existence of said facts and conditions, the defendant would have had the right to arm himself with a shotgun for the purpose of protecting himself, and under such circumstances and conditions the fact that the defendant may have had a

shotgun would not have been unlawful and could not be considered by you as an incriminating circumstance against him." Appellant insists it was not necessary to give this charge. Of course, to have given the converse charge, as appellant insists, would have been a charge on the weight of evidence, but this charge alone could not have any other purpose than to be beneficial to appellant, since it informs the jury that he (appellant) had a right to arm himself with a shotgun for self-protection. If the court had given the converse charge and told the jury if he armed himself for the purpose of using the shotgun to commit an unlawful homicide, they could consider the fact of getting the shotgun as a circumstance against him, we frankly admit that would have been on the weight of evidence and probably a reversible error.

Appellant further complains of the following charge of the court: "If you believe from the evidence that the deceased, George Jenkins, had made threats against the life of the defendant or had threatened to do him serious bodily harm, and that said threats had been communicated to the defendant, and at the time of the difficulty and at the time the gunshot was fired by the defendant, the said George Jenkins, by his acts or by his words accompanied by his acts or both, manifested an intent to put the threats so made and communicated to the defendant into execution, and that the defendant believed such threats were about to be put into execution, or if you have a reasonable doubt of same, you will acquit the defendant." We understand this charge to be correct. See Howard v. State, 23 Texas Crim. App., 265, and Lynch v. State, 24 Texas Crim. App., 350. Taking the charge as a whole, we find that the court gave an admirable presentation of the law, presenting same from defendant's standpoint as well as from the State's standpoint in all its phases.

Finding no error in this record, the judgment is in all things affirmed.

Davidson, Presiding Judge, absent.

*Affirmed.*

[Motion for rehearing overruled without written opinion, December 4, 1907. Reporter.]